# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, #R54570, | |
| Plaintiff, | Case No. 21-cv-00664-SPM |
| v. | |
| MICHAEL BARTOLOTTI, MR. HANKINS, DANIEL J. HARRISS, MATTHEW JOHNSON, MR. PORTER, MR. BRYANT, MR. BROCK, MR. DUDEK, C. HECK, MR. LUEKER, LORI PATTERSON, MR. JOHNSON, MARK BELL, MR. PESTKA, MR. BLAYLOCK, MR. WANGLER, MR. HERMANN, ROBERT TOMSAHCK, MR. SUMMERS, C. WALL, S. PETITJEAN, MICHAEL BAILEY, NEWBURY, ROBERT OLEARY, MS. CACIOPPO, G. HALE, MR. WANACK, S. MUMBOWER, MR. ADAMS, MR. MERACLE, JESSIE REID, MR. S. BROWN, MR. HAGSTON, MR. LITTLE, W. SHIRLEY, MR. SPILLER, | |

| | |
|---|---|
| LARRY PENLAND,<br>TODD SCHLOTT,<br>JUSTIN JURKOWSKI,<br>MR. MAYS,<br>JAMES BELFORD,<br>PHILLIP BAKER,<br>ALEXANDER RODMAN,<br>PATRICK PEEK,<br>KALE LIVELY,<br>BRANDON JUSTICE,<br>MR. COOLEY,<br>JUSTIN KULICH,<br>PERCY MYERS,<br>JANA RUETER,<br>JAMES GROVE,<br>B. BLUM,<br>CHARLES SWISHER,<br>T. VANDERKHOVE,<br>MR. MILLER,<br>MR. FRANK,<br>MR. BOWLES,<br>MR. URASKI,<br>MR. VAUGHN, and<br>MR. RICH,<br><br>            **Defendants.** | |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Joshua Lee Hoskins, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was housed at Pinckneyville Correctional Center ("Pinckneyville"). This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## COMPLAINT

Hoskins alleges that the events in question took place between February 1, 2020 and April

13, 2021. (Doc. 1, p. 63-65). He states that during this time, Defendants were aware he had elevated blood pressure and denied him medical care in retaliation for filing grievances and lawsuits against Pinckneyville staff. Hoskins claims that Defendants prevented him from receiving treatment for his elevated blood pressure by 1) denying and destroying grievances and sick calls slips addressed to the health care unit; 2) destroying and confiscating blood pressure medication found in his possession; and 3) monitoring the health care unit through staff reports and surveillance video footage so that they would know when he was seeking medical care. If blood pressure medicine was found in his possession, Hoskins was threatened that false disciplinary tickets would be issued.

As a result of Defendants' conduct Hoskins experienced stress, anxiety, headaches, difficulties breathing, lack of sleep, energy and exercise, an inability to focus and function, memory difficulties, chest and stomach pains, dizzy spells, and other health issues. (Doc. 1, p. 65).

### PRELIMINARY DISMISSALS

Hoskins opens his Complaint by listing the names of 55 Defendants and alleging that he told each Defendant that his blood pressure was elevated and that he needed their assistance in receiving medical care. They denied his requests and were all involved in denying him medical care for his elevated blood pressure in retaliation for filing grievances and lawsuits. (Doc. 1, p. 63). Later in the Complaint, Hoskins lists 21 Defendants and alleges they informed facility staff that Hoskins was using the sick call procedure to receive medical care and to thoroughly search his cell and property to locate blood pressure medications. (Doc. 1, p. 63-64). And finally, Hoskins claims that Defendants "Bowles, Uraski, Vaughn, and Rich gave the same conduct that the other Defendants gave in paragraph #1." (*Id.* at p. 65).

These general assertions against large groups of Defendants are not sufficient to state a claim. *See, e.g., Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (generic allegation that one or more defendants took an act is not sufficient). The Court will not allow claims to proceed against

Defendants Harriss, Matthew Johnson, Porter, Bryant, Dudek, Mr. Johnson, Wangler, Tomshack, Summers, Wall, Petitjean, Oleary, Wanack, Adams,[1] Meracle, Hagston, Little, Shirley, Spiller, Penland, Schlott, Jurkowski, Mays, Belford, Peek, Lively, Justice, Cooley, Kulich, Grove, Swisher, Vanderkhove, Miller, Bowles, Uraski, Vaugh, and Rich because Hoskins did not make sufficient allegations regarding the actions that these individual personally took to cause him harm. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (to state a valid § 1983 claim, a plaintiff must identify actions a defendant personally took that violated his rights). Accordingly, these Defendants will be dismissed without prejudice.

The Court also dismisses all claims against Defendant Offer Hale. Hale is listed in the case caption as a defendant, but there are no allegations against him in the body of the Complaint. *See Collins v. Kibort,* 143 F.3d 331, 334 (7th Cir. 1998).

## DISCUSSION

Based on the allegations in the Complaint, the Court designates the following counts:

> **Count 1:** Defendants Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank violated the Eighth Amendment by denying Hoskins access to medical treatment for his elevated blood pressure.
>
> **Count 2:** Defendants Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank violated the First Amendment by retaliating against Hoskins for filing grievances and lawsuits against Pinckneyville staff.

The parties and the Court will use this designation in all future pleadings and orders, unless

---

[1] The Court notes that in the Complaint Hoskins states that Defendant Pestka told an "Officer Adams," described as female, not to contact the health care unit for him. (Doc. 1, p. 65). This Officer Adams is not the same as Defendant Adams, who is described as male and a major. (Doc. 1, p. 4). Officer Adams is not listed as a Defendant in the case caption so any claims against her are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005)

otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Count 1

Hoskins alleges that in an effort to keep him from decreasing his blood pressure and to intentionally cause him harm:

- Nurses Patterson and Rueter gave security staff the names of medications that could be used to decrease elevated blood pressure so that the officers knew what to look for during cell searches and compliance box checks. Nurse Patterson also informed staff of when Hoskins took blood pressure medicine and told Hoskins that all his sick call slips and kites directed to the health care unit were destroyed and would continue to be destroyed.

- Rodman, Frank, and Cacioppo monitored the healthcare unit to ensure that Hoskins did not receive medicine to treat his high blood pressure.

- Rodman, Bartolotti, Mumbower, and Baker threatened Hoskins with false disciplinary tickets if he was found with blood pressure medication in his possession.

- Bailey, Rodman, and Baker gave the numbers to Hoskins's property boxes to all staff so they knew where to look for blood pressure medications during compliance box checks and cell searches.

- Bartolotti, Lueker, Bell, Hankins, Reid, Brown, Frank, and Rodman informed cell house staff to destroy Hoskins's sick call slips requesting medical treatment for elevated blood pressure and other health issues. These Defendants also informed staff to confiscate any medication in Hoskins's possession that would lower blood pressure. Defendants stated that they wanted Hoskins to die from elevated blood pressure to prevent him from proceeding and succeeding in his civil lawsuits that were pending against Pinckneyville staff.

- Reid and Brown took as many grievances addressed to the health care unit as they could before the grievances were processed.

- Reid, Brown, Newbury, Heck, Pestka, Blaylock, and Bartolotti destroyed grievances seeking medical attention.

- Dr. Myers and Nurse Practitioner Blum ignored his requests for treatment of his high blood pressure for over a year. On January 27, 2021, Dr. Myers finally prescribed him medication.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (7th Cir. 2007).

- On January 29, 2021, Brock and Hermann informed Blaylock that Hoskins had been prescribed blood pressure medicine. Blaylock came to Hoskins cell and directed him to drop the blood pressure medicine in the toilet. Blaylock threatened to kill Hoskins if he had blood pressure medication in his possession. Hoskins had a similar conversation with Heck on March 29, 2021.

- On March 26, 2021, during a compliance box check, Pestka entered Hoskins cell and told him that he would be in trouble if Pestka found any blood pressure medications. Newbury then repeated the same statement.

- On March 29, 2021, Nurse Patterson told Hoskins that she had made sure that Hoskins had not received blister packs of medication for his blood pressure in January, February, and March of 2021.

These claims are sufficient for Count 1 to proceed against Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank. *See King v. Kramer,* 680 F. 3d 1013 (7th Cir. 2012).

### Count 2

Hoskins allegations that Defendants denied him access to medical care for his blood pressure in retaliation for filing grievances and lawsuits also survives preliminary review. *See Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Count 2 will proceed against Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** shall proceed against Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank. All claims are **DISMISSED** without prejudice as to Harriss, Matthew Johnson, Porter, Bryant, Dudek, Mr. Johnson, Wangler,

Tomshack, Summers, Wall, Petitjean, Oleary, Wanack, Adams, Meracle, Hagston, Little, Shirley, Spiller, Penland, Schlott, Jurkowski, Mays, Belford, Peek, Lively, Justice, Cooley, Kulich, Grove, Swisher, Vanderkhove, Miller, Bowles, Uraski, Vaugh, Rich, and Hale. The Clerk of Court shall **TERMINATE** these individuals as parties.

Because Hoskins's claims involve his medical care, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court shall prepare for Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is directed to mail these forms, a copy of the Complaint and this Memorandum and Order to Defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Hoskins, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to**

**Administrative Order No. 244, Defendants only need to respond to the issues stated in this Merit Review Order.**

Finally, Hoskins is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   June 7, 2022**

                                           *s/Stephen P. McGlynn*
                                           **STEPHEN P. MCGLYNN**
                                           **United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.