UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA LEE HOSKINS,                )
                                   )
   Plaintiff,                      )
                                   )
   vs.                             )    Case No. 3:21-cv-00664-GCS
                                   )
MICHAEL BARTOLOTTI, et al.,        )
                                   )
   Defendants.                     )
                                   )

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Pending before the Court are Defendants' Motions for Summary Judgment as to Exhaustion of Administrative Remedies. (Doc. 68, 75). Defendants Blum, Myers and Rueter ("Wexford Defendants") filed their Motion for Summary Judgment along with a Memorandum of Support on February 8, 2023. (Doc. 68, 69). Defendants Bailey, Baker, Bartolotti, Bell, Blaylock, Brock, Brown, Cacioppo, Frank, Hankins, Heck, Hermann, Lueker, Mumbower, Newbury, Pestka, Reid and Rodman ("IDOC Defendants") filed their Motion for Summary Judgment and Memorandum of Support on February 22, 2023. (Doc. 75, 76). Plaintiff timely filed a response to the motions on February 28, 2023. (Doc. 78). Defendants Blum, Myers and Rueter filed a Reply to Plaintiff's Response on March 14, 2023. (Doc. 81). The Court held hearings on the motions on June 14, 2023, and July 31, 2023, and took the matter under advisement. (Doc. 93, 99).

On December 26, 2023, Plaintiff filed a Motion to Allow Plaintiff to Submit Newly Discovered Evidence for the Court to Consider. (Doc. 110). The Court granted Plaintiff's

Motion on January 2, 2024. (Doc. 112). Accordingly, Plaintiff filed three supplements with the Court consisting of various Facebook pages for some of the Defendants. (Doc. 114, 115, 116). While the Court did consider the social media evidence presented by Plaintiff, it merely demonstrates a social media relationship between several Defendants in this case and does not impact the Court's analysis in this Memorandum & Order.

For the reasons delineated below, the Court **GRANTS** the Wexford Defendants' Motion for Summary Judgment. (Doc. 68) The Court **GRANTS IN PART** and **DENIES IN PART** the IDOC Defendants' Motion for Summary Judgment. (Doc. 75).

PROCEDURAL BACKGROUND

On June 21, 2021, Plaintiff Hoskins, who was an inmate of the Illinois Department of Corrections ("IDOC") incarcerated at Dixon Correctional Center ("Dixon"), brought this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was at Pinckneyville Correctional Center ("Pinckneyville").[1] (Doc. 1). In his Complaint, Hoskins alleges that Defendants were aware that he suffered from elevated blood pressure, but they denied him treatment in retaliation for filing grievances and lawsuits against Pickneyville staff. *Id.* at p. 63-65. Due to Defendants' conduct, Hoskins reported that he experienced stress, anxiety, headaches, difficulty breathing, lack of sleep, energy and exercise, an inability to focus and function, memory difficulties, chest and stomach pains, dizzy spells, and other health issues. *Id.* at p. 65.

On June 7, 2022, the Court completed a preliminary review of Plaintiff's Complaint

---

[1]     Plaintiff was housed at Pickneyville Correctional Center until April 8, 2021.

under 28 U.S.C. § 1915A.[2] (Doc. 20). The Court construed Plaintiff's Complaint into the

following counts:

> **Count 1:** Defendants Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank violated the Eighth Amendment by denying Hoskins access to medical treatment for his elevated blood pressure.

> **Count 2:** Defendants Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann, Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter, Blum, and Frank violated the First Amendment by retaliating against Hoskins for filing grievances and lawsuits against Pinckneyville staff.

(Doc. 20, p. 4). The Court allowed Counts 1 and 2 to proceed against Defendants

Bartolotti, Hankins, Brock, Heck, Lueker, Patterson, Bell, Pestka, Blaylock, Hermann,

Bailey, Newbury, Cacioppo, Mumbower, Reid, Brown, Baker, Rodman, Myers, Rueter,

Blum, and Frank. *Id.* at p. 6. The Court dismissed Plaintiff's claims without prejudice as

to Defendants Harriss, M. Johnson, Porter, Bryant, Dudek, Johnson, Wangler, Tomshack,

Summers, Wall, Petitjean, Oleary, Wanack, Adams, Meracle, Hagston, Little, Shirley,

Spiller, Penland, Schlott, Jurkowski, Mays, Belford, Peek, Lively, Justice, Cooley, Kulich,

Grove, Swisher, Vanderkhove, Miller, Bowles, Uraski, Vaugh, Rich, and Hale. *Id.*

### FACTUAL BACKGROUND

Plaintiff's Grievance Record is voluminous. Between February 7, 2020, and

February 19, 2021, which is the period when Plaintiff allegedly received inadequate

---

[2]     Plaintiff's Complaint originally named fifty-five Defendants. However, the Court held that Plaintiff's "general assertions against [the] large group of Defendants" was not sufficient to state a claim. (Doc. 20, p. 3) (finding that generic allegations against one of more defendants is not sufficient to state a claim) (citing *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009)).

medical treatment for his blood pressure, Plaintiff filed 64 grievances at Pickneyville. (Doc. 69, Exh. 2-4). After Plaintiff was transferred to Dixon, he filed additional grievances regarding the medical treatment he received at Pickneyville. (Doc. 69, Exh. 5-7). Plaintiff's Grievance Record obtained from the Administrative Review Board ("ARB") contains a total of 657 pages of potentially relevant grievances. (Doc. 69, Exh. B). Plaintiff and Defendants agree as to which grievances are at issue. *See generally* (Doc. 69, 76, 78). Accordingly, the Court will review those grievances identified by the parties and will then provide an overview of the testimony provided at the motion hearings.

A.      **Grievances Filed by Plaintiff that Did Not Receive a Grievance Number**

Grievances dated February 17, 2020, February 23, 2020, March 1, 2020, March 2, 2020, March 8, 2020, March 10, 2020[3], March 10, 2020[4], March 12, 2020[5], March 12, 2020[6], March 15, 2020, March 16, 2020, March 18, 2020, March 19, 2020, March 21, 2020, March 31, 2020, and April 6, 2020, were each submitted directly to the ARB. *See generally* (Doc. 69, Exh. 3). For each of these grievances, the ARB requested that Plaintiff provide

---

[3]      The first grievance dated March 10, 2020, describes an incident between Plaintiff and C/O Bell, Sgt. Peck, and Lt. Smith that allegedly occurred on March 8, 2020. (Doc. 69, Exh. 3, p. 83-85).

[4]      The second grievance dated March 10, 2020, describes an incident between Plaintiff and Major Coke as well as an incident between Plaintiff and healthcare staff that allegedly occurred on March 7, 2020. Plaintiff also complained that he was being denied his medications. (Doc. 69, Exh. 3, p. 92-94).

[5]      The first grievance dated March 12, 2020, describes an incident between Plaintiff and C/O Bell, Nurse Rueter, and Sgt. Wanack that allegedly occurred on March 11, 2020. (Doc. 69, Exh. 3, p. 52-54).

[6]      The second grievance dated March 12, 2020, describes an incident between Plaintiff and C/O Bailey, Lt. Johnson, Nurse Rueter, Dr. Chapman, and Sgt. Wanack that allegedly occurred on March 9, 2020. (Doc. 69, Exh. 3, p. 66-68).

additional information including the Counselor, Grievance Officer, and Chief Administrative Officer's ("CAO") response. *See, e.g., id.* at p. 86.

**B.  Grievances Filed by Plaintiff that Received a Grievance Number**

   *1.    Grievance No. 584-03-20*

Plaintiff filed Grievance No. 584-03-20 on March 2, 2020. (Doc. 69, Exh. 3, p. 39). In the Grievance, Plaintiff claimed that Defendants Rueter, Myers, and Blum denied him access to "dental care and medical care . . . [at] the Health Care Unit ("HCU")" in retaliation for him filing grievances about the HCU staff. *Id.* at p. 40. The specific medical issues Plaintiff grieved included "bleeding swollen pus-filled gums, toothaches, headaches, rashes, skin tearings, boils, pus filled blisters . . . swelling, skin redness, rashes, sores bleeding and other health issues with daily ongoing pain and suffering." *Id.* The Counselor received Plaintiff's Grievance on March 9, 2020. *Id.* at p. 39. On March 12, 2020, the Counselor noted that "the grievance officer [had] reviewed [Plaintiff's] grievance history for the past six months and . . . found that 27 out of 27 grievances [had] been responded to . . . [and Plaintiff's] grievance [was] unsubstantiated." *Id.* The ARB received the Grievance on March 19, 2020. *Id.* at p. 38. On June 25, 2020, the ARB returned the Grievance and requested that Plaintiff supply it with responses from the Grievance Officer and CAO. *Id.*

   *2.    Grievance No. 841-03-20*

Plaintiff submitted Grievance No. 841-03-20 as an emergency on March 25, 2020. (Doc. 69, Exh. 3, p. 36). In the Grievance, Plaintiff named Defendants Rueter, Blum, and Myers claiming that they denied him medical care for "rashes, pus filled blisters on his

body, daily itches, etc. health issues which all been going on for almost a year." *Id.* at p.

36-37. Plaintiff also mentioned that he was "dealing with headaches, pains throughout

the body, respiratory (chest) issues pains etc. illness the facility dentist is aware of all

this." *Id.* at p. 36. On March 27, 2020, the CAO determined that the Grievance was

emergent. *Id.* at p. 36. On March 30, 2020, the Grievance Officer responded finding that

Plaintiff did not provide dates when the incident occurred. *Id.* at p. 35. The Grievance also

failed to meet Department Rule 504F. *Id.* Accordingly, the Grievance Officer did not

review the Grievance on the merits. *Id.* The CAO concurred with the Grievance Officer's

determination on April 1, 2020. *Id.* Plaintiff then appealed the Grievance to the ARB on

April 6, 2020. *Id.* The ARB received Plaintiff's Grievance on April 10, 2020. *Id.* at p. 34. On

September 1, 2020, the ARB returned the Grievance indicating that Plaintiff had "failed

to meet DR504.810. Failed to provide dates of incident." *Id.*

3.      *Grievance No. 2885-12-20*

Plaintiff submitted Grievance No. 2885-12-20 as an emergency on December 14,

2020. (Doc. 69, Exh. 2, p. 34). In the Grievance, Plaintiff complained about the grievance

process. *Id.* at p. 34-35. On December 15, 2020, the Counselor reviewed Plaintiff's

Grievance and indicated that "all grievances submitted by grievant have been processed

according to policy and procedure . . . [c]urrently there are no open grievances for the

dates cited by grievant." *Id.* at p. 34. On December 16, 2020, the CAO determined that

Plaintiff's Grievance was non-emergent. *Id.* The Grievance Officer received Plaintiff's

Grievance on January 14, 2021. *Id.* at p. 32. On February 2, 2021, the Grievance Officer

completed the review and noted the following: "[b]ased upon a review of all available

information and staff interview, [Plaintiff's allegations were] unable to [be] substantiate[d] . . . I recommend that the grievance be denied." *Id.* The CAO concurred with the Grievance Officer's determination on February 3, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on February 22, 2021. *Id.* The ARB received Plaintiff's Grievance on February 25, 2021. *Id.* at p. 31. The ARB denied the Grievance on May 10, 2021, concluding that "the issues . . . [could] not be substantiated as offender provides no dates." *Id.*

     4.    *Grievance No. 6-1-21*

Plaintiff submitted Grievance No. 6-1-21 as an emergency on January 3, 2021. (Doc. 69, Exh. 3, p. 14). On January 5, 2021, the CAO deemed the Grievance as emergent. *Id.* In the Grievance, Plaintiff claimed that on December 26-27, 2020, a Jane Doe nurse would not assist him with complaints of chest pain, shortness of breath, or headaches. *Id.* at p. 14-15. Plaintiff later recounted an incident that occurred on December 29, 2020, during which an unnamed female nurse claimed that the "NP and MD that was on duty that date told her they wasn't proscribing me no blood pressure medication that I will have to work with life skills but I will receive blood pressure checks twice a week." *Id.* at p. 15. On January 4, 2021, the Grievance Officer received the Grievance and completed the review on March 26, 2021. *Id.* at p. 12. After speaking with the HCU administrator, the Grievance Officer concluded that the Grievance should be denied. *Id.* at p. 12-13. On March 29, 2021, the CAO concurred with this determination. *Id.* at p. 12. Plaintiff appealed to the ARB on March 30, 2021. *Id.* The ARB received Plaintiff's Grievance on April 2, 2021, and it denied the Grievance on the merits on April 9, 2021. (Doc. 69, Exh. 3, p. 11).

5.      *Grievance No. 40-1-21*

Plaintiff submitted Grievance No. 40-1-21 on January 3, 2021, grieving issues

relating to staff misconduct. (Doc. 69, Exh. 2, p. 74). In the Grievance, Plaintiff noted that

"on the above date" that "Officer Blaylock stated that he and C/Os Schlott and Jurkowski

had it out for me and that they knew that my blood pressure was elevated have spoken

to nurses who disliked me and have made it where I didn't at this time get blood pressure

checks nor medication for my blood pressure." *Id.* at p. 75. The Counselor received

Plaintiff's Grievance on January 4, 2021. *Id.* at p. 74. The Counselor denied the Grievance

on January 27, 2021, for failing to provide dates on which the alleged incident occurred.

*Id.* The Grievance Officer received Plaintiff's Grievance on January 29, 2021. *Id.* at p. 73.

The Grievance Officer denied the Grievance on February 22, 2021, because Plaintiff did

not provide specific dates. *Id.* The CAO concurred with the Grievance Officer's decision

on February 22, 2021. *Id.* Plaintiff appealed the Grievance on February 23, 2021. *Id.* The

ARB received Plaintiff's Grievance on April 5, 2021. *Id.* at p. 72. The ARB denied it on

May 6, 2021, finding that "the issue was appropriately addressed by facility

administration." *Id.*

6.      *Grievance No. 115-01-21*

Plaintiff submitted Grievance No. 115-01-21 on January 7, 2021. (Doc. 69, Exh. 5, p.

50-53). In the Grievance, Plaintiff discussed his elevated blood pressure – noting that

Bartolotti was aware of this condition. (Doc. 69, Exh. 6, p. 4). Further, Plaintiff alleged that

his grievances were not returned to him by Wall, Baker, Shirley, Wangler, Hankins, Bell,

Jurkowski, Schlott, Rodman, Rich, Bailey, Bartolotti, and others in retaliation for filing so

many grievances. (Doc. 69, Exh. 6, p. 4). The Counselor received Plaintiff's Grievance on January 8, 2021. *Id.* at p. 1. The Counselor denied it on January 27, 2021, because the "only date cited d[id] not meet the 60-day time frame set forth by DR504." *Id.* Plaintiff's Grievance was received by the Grievance Officer on January 29, 2021. (Doc. 69, Exh. 5, p. 40). On February 22, 2021, the Grievance Officer recommended that the Grievance be denied because "offender failed to meet DR 504.810." *Id.*  The CAO concurred on February 23, 2021. *Id.* Plaintiff appealed the Grievance on February 25, 2021. (Doc. 69, Exh. 2, p. 49). The ARB received the Grievance on March 1, 2021, and it was denied on May 6, 2021. *Id.* at p. 48.

   *7.    Grievance No. 158-01-21*

   Plaintiff submitted Grievance No. 158-01-21 as an emergency on January 8, 2021. (Doc. 69, Exh. 2, p. 25). In the Grievance, Plaintiff recalled Sergeant O'Leary telling him he wasn't coming out of his cell for a blood pressure check after he attempted to get a nurse's attention for treatment. He requested that the nurse report Sergeant O'Leary for staff misconduct. *Id*. The nurse reportedly told Plaintiff that she would not report O'Leary because she couldn't be a "snitch." *Id.* at p. 26. Plaintiff further reported that he was experiencing "breathing issues, blurred vision, headaches, chest pain, and shortness of breath." *Id.*

   On January 13, 2021, the CAO determined that the Grievance was non-emergent. *Id.* On January 21, 2021, the Counselor reviewed the Grievance and concluded that it did not meet DR 504.810 because the "date when [the] incident occurred was not cited by [the] offender." (Doc. 69, Exh. 2, p. 25). The Grievance Officer received the Grievance for

review on January 29, 2021. *Id.* at p. 24. On February 22, 2021, the Grievance Officer recommended the Grievance be denied for failure to comply with DR 504.810. *Id.* On the same date, the CAO concurred with the recommendation. *Id.* Plaintiff appealed the Grievance to the ARB on February 23, 2021. The ARB received the Grievance on March 5, 2021. *Id.* at p. 23. The ARB denied the Grievance on May 20, 2021, concluding that the issue was appropriately addressed by the facility administration.[7] *Id.*

8.    *Grievance No. 279-01-21*

Plaintiff filed Grievance No. 279-01-21 as an emergency on January 20, 2021. (Doc. 69, Exh. 2, p. 20-22). On January 26, 2021, the CAO determined that Plaintiff's Grievance was non-emergent. *Id.* at p. 20. In the Grievance, Plaintiff claimed that Nurse Patterson informed him that the only reason she was checking his blood pressure was because there were cameras in the cell house to prove whether she did his blood pressure check. (Doc. 69, Exh. 2, p. 21). Plaintiff also claimed he was not getting his blood pressure medication.

---

[7]    Included in the documentation for Grievance No. 158-01-21 are emails between Ann Lahr from the Grievance Office at Pinckneyville and Shayne Mercier from Field Services at Pinckneyville dated May 6, 2021, and May 14, 2021. (Doc. 69, Exh. 2, p. 27-28). A memorandum from Sergeant O'Leary denying the allegations was also attached to the emails. *Id.* at p. 29.

Further, in the May 6, 2021, email, Ms. Lahr noted the following regarding the denial of Grievance No. 158-01-21:

I am reviewing grievance No. 158-01-21, where he makes allegations against Sgt. O'Leary. Tour 2/22/21 response states that he failed to provide any dates within the body of the grievance that comply with the 60-day time frame set by DR 504.810

However, the way I am reading it, "On the above date at the above named facility named grievant encountered Sergeant O'Leary while being on unit wing R3C as the nurse did in house insulin line" provides the date of 1/8/21."

*Id.* The Grievance Officer received the Grievance on January 25, 2021. *Id.* at p. 18. The Grievance Officer denied it on February 22, 2021. *Id.* The CAO concurred with the denial on April 22, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on May 6, 2021. *Id.* The ARB received Plaintiff's Grievance on May 10, 2021. *Id.* at p. 17. The ARB denied it on June 22, 2021, concluding that the issue was appropriately addressed by facility administration. *Id.*

       9.    *Grievance No. 292-01-21*

Plaintiff filed Grievance No. 292-01-21 on January 24, 2021. (Doc. 69, Exh. 2, p. 57-58). In the Grievance, Plaintiff noted that he suffers from elevated blood pressure, suicidal depression, migraine headaches, and chest pain. *Id.* at p. 58. Plaintiff only named Sergeant Bartolotti and C/O Blaylock in relation to these concerns. *Id.* Plaintiff also noted that Myers was aware that Blaylock had threatened Plaintiff on January 24, 2021. Plaintiff reported that Blaylock threatened to prevent him from seeing a tele psychiatrist if he told the psychiatrist he needed to be re-prescribed mental health medication. *Id.* at p. 57-58. The Counselor reviewed Plaintiff's Grievance on January 25, 2021. *Id.* at p. 57. On January 27, 2021, the Counselor referred the Grievance to Mental Health Services because of Plaintiff's complaints about suicidal depression. *Id.* The Grievance Officer received the Grievance on January 29, 2021. *Id.* at p. 55. On February 22, 2021, the Grievance Officer recommended the Grievance be denied as Plaintiff had spoken with a Mental Health Professional daily from January 25th to January 27th, while he was on crisis watch. *Id.* The CAO concurred with this determination on February 22, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on February 23, 2021. *Id.* The ARB received Plaintiff's Grievance on

March 5, 2021. *Id.* at p. 54. The ARB denied it on May 6, 2021, concluding that the issue was appropriately addressed by the facility administration. *Id.*

10.     *Grievance No. 345-01-21*

Plaintiff filed Grievance No. 345-01-21 on January 27, 2021. (Doc. 69, Exh. 2, p. 68-69). In the Grievance, Plaintiff asserted that C/O Brock informed him that C/O Hermann, who had escorted Plaintiff to R3 House, told him that he was aware of Plaintiff's elevated blood pressure and that Dr. Myers had prescribed him with medication to control his blood pressure. *Id.* Plaintiff further asserted that C/O Brock had informed his team in R3 house to make sure Plaintiff did not have access to his blood pressure medications. *Id.* The Counselor received Plaintiff's Grievance on January 28, 2021. *Id.* At p. 68. The Counselor denied it as unsubstantiated on January 29, 2021. *Id.* The Grievance Officer received Plaintiff's Grievance on February 25, 2021. *Id.* at p. 67. It was likewise denied as unsubstantiated on March 16, 2021. *Id.* The CAO concurred with the Grievance Officer's determination on March 17, 2021. *Id.* Plaintiff appealed to the ARB on March 19, 2021. *Id.* The ARB received Plaintiff's Grievance on March 24, 2021. *Id.* at p. 66. The ARB denied it on May 6, 2021, concluding that the issue was properly addressed by facility administration. *Id.*

11.     *Grievance No. 364-02-21*

Plaintiff filed Grievance No. 364-02-21 as an emergency on January 30, 2021. (Doc.69, Exh. 3, p. 25-26). In the Grievance, Plaintiff complained about not receiving his prescribed blood pressure checks on January 27th and 28th. *Id.* at p. 26. Plaintiff further grieved that C/O Blaylock made him flush the blister packs of blood pressure medication

that he received on January 27th. *Id.* On February 3, 2021, the CAO determined that Plaintiff's Grievance was emergent. (Doc. 69, Exh. 3, p. 25). The Grievance Office received the Grievance on February 1, 2021, and it was reviewed on February 25, 2021. *Id.* at p. 23. After receiving information from the Health Care Unit Administrator regarding Plaintiff's allegations, the Grievance Officer recommended that Plaintiff's Grievance be denied. *Id.* at p. 23-24. The CAO concurred with this determination on March 6, 2021. *Id.* On March 2, 2021, Plaintiff appealed the Grievance to the ARB. *Id.* The ARB received Plaintiff's Grievance on March 5, 2021. *Id.* at p. 22. The ARB denied the Grievance on March 23, 2021, concluding that the issue was appropriately addressed by the facility administration. *Id.*

    12.    *Grievance No. 369-02-21*

Plaintiff filed Grievance No. 369-02-21 on January 30, 2021. (Doc. 69, Exh. 2, p. 39-40). In the Grievance, Plaintiff complained about inadequate dental care. *Id.* Plaintiff noted that he saw Dr. Myers on January 27, 2021. *Id.* at p. 40. Plaintiff told him about his dental issues, but Myers reportedly refused to forward Plaintiff's concerns to dental staff or provide him with ibuprofen for pain relief. *Id.* The Grievance Office received Plaintiff's Grievance on February 1, 2021. *Id.* at p. 37. On February 25, 2021, the Grievance Officer recommended that it be denied. *Id.* The CAO concurred with the Grievance Officer's determination on March 1, 2021. *Id.* On March 2, 2021, Plaintiff appealed the Grievance to the ARB. *Id.* The ARB received Plaintiff's Grievance on March 5, 2021. The ARB denied it as moot on May 7, 2021, finding that "offender was seen by dental as soon as he was off quarantine. He is scheduled to be seen 5/7/21 for a dental extraction. Staff misconduct

allegations were not substantiated." (Doc. 69, Exh. 2, p. 36).

13.    *Grievance No. 431-02-21*

Plaintiff filed Grievance No. 431-02-21 as an emergency on February 8, 2021. (Doc. 69, Exh. 3, p. 20-21). In the Grievance, Plaintiff alleged that Lt. Johnson, Sgt. Porter, C/O Lueker, C/O Pestka, and C/O Blaylock told him that they had told medical staff not to provide him with blister packs of his prescribed blood pressure medication. *Id.* at p. 21. Plaintiff also claimed that Nurse Patterson stated that she knew he was prescribed blood pressure medication that would lower his blood pressure for a year and that she was asked by security staff to make sure he did not receive it. *Id.* On February 8, 2021, the CAO determined that Plaintiff's Grievance was emergent. *Id.* at p. 21. The Grievance Office received Plaintiff's Grievance on February 8, 2021. *Id.* at p. 18. On March 11, 2021, the Grievance Officer reviewed the Grievance and recommended that it be denied. *Id.* The CAO concurred with the recommendation on March 12, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on March 16, 2021. *Id.* The ARB received Plaintiff's Grievance on March 19, 2021. *Id.* at p. 17. The ARB denied it on March 24, 2021, concluding that the issues were appropriately addressed by the facility administration; the allegations of staff misconduct could also not be substantiated. *Id.*

14.    *Grievance No. 424-02-21*

Plaintiff filed Grievance No. 424-02-21 on February 8, 2021. (Doc. 69, Exh. 2, p. 15-16). In the Grievance, Plaintiff complained about being denied access to his medical records. *Id.* Plaintiff also noted that C/O Cacioppo stated that she told all the nurses to destroy his sick call slips regarding elevated blood pressure. *Id.* at p. 16. The Grievance

Office received Plaintiff's Grievance on February 8, 2021. *Id.* at p. 13. On August 11, 2021, the Grievance Officer reviewed the Grievance and recommended that it be denied as moot because "grievant [wa]s no longer at PNK CC." *Id.* On August 12, 2021, the CAO concurred with the Grievance Officer's recommendation. *Id.* Plaintiff then appealed the Grievance to the ARB on September 2, 2021. *Id.* The ARB received Plaintiff's Grievance on September 7, 2021. *Id.* at p. 12. On November 4, 2021, the ARB denied the Grievance as moot because "Hoskins has[d]been transferred to another facility." *Id.*

15.     *Grievance No. 422-02-21*

Plaintiff filed Grievance No. 422-02-21 on February 9, 2021. (Doc. 69, Exh. 2, p. 45-47). In the Grievance, Plaintiff noted that an unidentified white heavy-set nurse denied him Tylenol and his blood pressure medication. *Id.* at p. 46-47. The Grievance Office received Plaintiff's Grievance on February 9, 2021. *Id.* at p. 43. On March 11, 2021, the Grievance Officer reviewed the Grievance and concluded that it should be denied. *Id.* The CAO concurred with the Grievance Officer's recommendation on March 12, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on March 16, 2021. *Id.* The ARB received Plaintiff's Grievance on March 19, 2021. *Id.* at p. 42. The ARB denied it on May 6, 2021, concluding that the facility addressed the issue appropriately. *Id.*

16.     *Grievance No. 469-02-21*

Plaintiff submitted Grievance No. 469-02-21 on February 11, 2021. (Doc. 69, Exh. 2, p. 80-81). In the Grievance, Plaintiff claimed that several of his grievances were destroyed by Counselor Hellman. *Id.* at p. 81. Plaintiff also asserted that C/Os Bailey, Blaylock, Brock, Pestka, Cacioppo, Sgt. Bartolotti, and numerous other non-defendants prevented

him from getting blood pressure checks. *Id.* The Counselor received Plaintiff's Grievance on February 11, 2021. *Id.* at p. 80. On February 17, 2021, the Counselor reviewed the Grievance and noted that Plaintiff's complaints had been answered. *Id.* The Grievance Office received Plaintiff's Grievance on February 18, 2021. *Id.* at p. 78. On March 8, 2021, the Grievance Officer reviewed Plaintiff's Grievance and recommended that it be denied due to "Counselor Hallman's denial of the allegations against him." *Id.* The CAO concurred with the Grievance Officer's recommendation on March 10, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on March 12, 2021. *Id.* The ARB received Plaintiff's Grievance on March 17, 2021. *Id.* at p. 77. The ARB denied it on May 5, 2021, concluding that the issue was appropriately addressed by the facility administration. *Id.*

17.   *Grievance No. 474-02-21*

Plaintiff filed Grievance No. 474-02-21 as an emergency on February 16, 2021. (Doc. 69, Exh. 3, p. 7-10). In the Grievance, Plaintiff alleged that between December 2020 and February 2021, C/Os Bailey, Blaylock, Brock, Cacioppo, Hankins, Pestka, Sgt. Bartolotti, and numerous others prevented Plaintiff from receiving blood pressure checks. *Id.* at p. 8. Plaintiff further noted that Dr. Myers had prescribed him blood pressure medication for one year. *Id.* The CAO determined that Plaintiff's Grievance was emergent on February 17, 2021. *Id.* at p. 7. The Grievance Office received Plaintiff's Grievance on that same date. *Id.* at p. 5. On March 31, 2021, the Grievance Officer reviewed the Grievance and recommended that it be denied. *Id.* The CAO concurred with the Grievance Officer's recommendation on April 1, 2021. (Doc. 69, Exh. 3, p. 5). Plaintiff appealed the Grievance to the ARB on April 2, 2021. *Id.* The ARB received the Grievance on April 7, 2021. *Id.* at p.

4. The ARB denied it on April 13, 2021, because Plaintiff's allegations were unsubstantiated. *Id.*

18.    *Grievance No. 511-02-21*

On February 18, 2021, Plaintiff filed Grievance No. 511-02-21 regarding his access to religious services. (Doc. 69, Exh. 2, p. 62-65). Plaintiff alleged that Rueter "used the security staff to restrict [him] from practicing [his] religious faith and belief." *Id.* at p. 63. Plaintiff also alleged that C/Os Brock, Bailey, Cacioppo, Pestka, and Blaylock – among others - had been involved in obstructing Plaintiff's receipt of responses to his grievances. *Id.* On February 19, 2021, the Counselor received Plaintiff's Grievance, and on February 22, 2021, the Counselor concluded that it should be denied. *Id.* at 62, 64. The Counselor reasoned that Nurse Rueter was not at the facility on the date of the alleged incident and Plaintiff's Grievances had been returned to him. *Id.* The Grievance Officer received Plaintiff's Grievance on February 23, 2021. *Id.* at p. 60. On March 15, 2021, the Grievance Officer recommended that it be denied. *Id.* The CAO concurred with the Grievance Officer's determination on March 17, 2021. *Id.* Plaintiff appealed the Grievance to the ARB on March 19, 2021. *Id.* The ARB received Plaintiff's Grievance on March 24, 2021. *Id.* at p. 59. The ARB denied it on May 6, 2021, concluding that the issue was addressed appropriately by facility administration. *Id.*

19.    *Grievance No. 193-01-21*

On January 14, 2021, Plaintiff filed Grievance No. 193-01-21 relating to staff conduct. (Doc. 69, Exh. 3, p. 30-33). The Counselor denied the Grievance on January 27, 2021, concluding that a date was not cited by Plaintiff. *Id.* at p. 30. The Grievance Officer

recommended that it be denied, and the CAO concurred with that recommendation on February 24, 2021. *Id.* at p. 28. When Plaintiff appealed the Grievance to the ARB, he included a letter addressed to the ARB dated February 26, 2021. *Id.* at p. 32. In the letter, Plaintiff alleged that LPN Patterson denied him his blood pressure medication and indicated that there was a collective "set up" amongst staff at Pickneyville to deny Plaintiff access to the medication. *Id.* He also noted that "C/Os Pestka, Blaylock, Hankins, Sergeant Bartolotti, Sergeant Mr. Porter, Lieutenants Petitjean, Johnson and C/O Schlott and other security staff [were] involved as well." *Id.* at p. 33. On March 3, 2021, the ARB received the Grievance. *Id.* at p. 27. The ARB denied it on March 8, 2021, noting that the grievance failed to meet Department Rule 504.810. *Id.*

20.   *Grievance No. 1884-08-20*

Plaintiff filed Grievance No. 1884-08-20 on August 3, 2020. (Doc. 69, Exh. 6, p. 28-29). In the Grievance, Plaintiff complained about the grievance process. *Id*. Plaintiff noted that he had previously submitted grievances regarding denial of medical care from Myers, Blum, and Rueter. The Counselor responded to Plaintiff's Grievance on August 12, 2020, noting that "dates when incident occurred was not cited by offender . . . Grievant will need to submit a new grievance." *Id.* at p. 28. The Grievance was not submitted to the Grievance Officer for second level review. (Doc. 69, Exh. 1, p. 1).

21.   *Grievance No. 1735-07-20*

Plaintiff filed Grievance No. 1735-07-20 on July 14, 2020. (Doc. 69, Exh. 6, p. 30-31). In the Grievance, Plaintiff asserted that he never received responses back for grievances concerning staff misconduct that he submitted in May, June, and July of 2020. *Id*. at p. 31.

Plaintiff named RN Rueter as one of the individuals he had grieved about. *Id.* On July 16, 2020, the Counselor indicated that "dates when incident occurred was not cited by offender . . . Grievant will need to submit a new grievance." *Id.* at p. 30. The Grievance was not submitted for second level review. (Doc. 69, Exh. 1, p. 1).

22.   *Grievance No. 1660-07-20*

Grievance No. 1660-07-20 was filed by Plaintiff on July 6, 2020. (Doc. 69, Exh. 6, p. 32-33). Plaintiff grieved about his lack of access to the grievance process, noting that he had previously submitted grievances about the conduct of Myers, Blum, and Rueter. *Id.* at p. 33. Plaintiff also noted that staff members prevented him from receiving his prescribed psychotropic medications. *Id.* On July 9, 2020, the Counselor reviewed Plaintiff's Grievance concluding that "dates when incident occurred was not cited by offender . . . Grievant will need to submit a new grievance." *Id.* at p. 32. The Grievance was not submitted for second level review. (Doc. 69, Exh. 1, p. 1).

23.   *Grievance No. 1254-05-20*

On May 5, 2020, Plaintiff filed Grievance No. 1254-05-20 relating to problems with the grievance process. (Doc. 69, Exh. 6, p. 34-35). Plaintiff indicated he sent grievances to the ARB in March and April of 2020, but he never received a response back. *Id.* at p. 34. Plaintiff also noted that the grievances forwarded to the ARB concerned staff misconduct by Rueter, Blum, Myers, and others. *Id.* at p. 35. Plaintiff indicated these staff members, were "not allowing [him to] receive [his] prescribed psychotropic medications, hygiene products, medical care, other human necessities, . . . pain medications etc." *Id.* On May 8, 2020, the Counselor responded noting that "this is a duplicate grievance to grievance #

112-04-20. If the offender is not satisfied with the response to that grievance, he may forward it for second level review." *Id.* at p. 34. The Grievance was not submitted to the Grievance Officer for second level review. (Doc. 69, Exh. 1, p. 1).

24.   *Grievance No. 1113-04-20*

On April 21, 2020, Plaintiff filed Grievance No. 1113-04-20 relating to his access to the grievance process in January 2020. (Doc. 69, Exh. 6, p. 36-37). Plaintiff named Myers, Blum, and Rueter, stating he filed grievances about their conduct. *Id.* at p. 37. On April 23, 2020, the Counselor responded and noted that "per D/R 504.810 grievance is out of the 60-day time frame no further review warranted at this time." *Id.* at p. 36. The Grievance was not submitted for second level review. (Doc. 69, Exh. 1, p. 1).

25.   *Grievance No. 1112-04-20*

Plaintiff filed Grievance No. 1112-04-20 on April 20, 2020. (Doc. 69, Exh. 6, p. 38-39). In the Grievance, Plaintiff indicated he submitted a grievance dated March 25, 2020, to the ARB concerning dental and medical staff misconduct, but he never received a response. *Id.* at p. 38-39. Plaintiff noted that the grievance named Rueter. *Id.* at p. 39. On April 23, 2020, the Counselor responded indicating that "if Plaintiff submitted said grievances to the ARB for review via USPS the ARB will review, and return said grievances to the offender . . . the facility has no control or jurisdiction over USPS. No further review warranted at this time." *Id.* at p. 38. The Grievance was not submitted for second level review. (Doc. 69, Exh. 1, p. 1).

C.   **Testimony During the June 14th and July 31st Motion Hearings**

Plaintiff and Defendants supplied the Court with witness testimony at the June

14th and July 31st hearings on Defendants' Motions for Summary Judgment. A summary of the testimony is included below.

1.  *Jennifer Shaw*

Ms. Shaw has served as a correctional counselor for three years. She testified regarding the grievance procedure process in IDOC facilities. Shaw noted that when an inmate transfers to another facility, the new facility cannot address grievances related to staff misconduct that occurred at the inmate's old facility. However, Shaw did note that the new facility can address medical and personal property grievances that occurred at an inmate's prior facility. Accordingly, Shaw noted that such grievances should not be sent directly to the ARB for review but should be filed at the facility level.

2.  *Amanda Adams*

Ms. Adams has served as a correctional officer for five years. She testified regarding her personal interactions with Plaintiff, as well as her knowledge of the IDOC grievance process. Ms. Adams noted that she did not recognize Hoskins. Adams also indicated that she had never collected mail from inmates to go into the mail or grievance boxes. She further testified that if she were asked by an inmate to place a grievance in the grievance box for them that she would refuse to do so because inmates are responsible for placing their grievances in the grievance box. However, Adams stated that correctional officers may distribute grievance forms to inmates.

3.  *Annette Shirley*

Ms. Shirley worked at Pickneyville for twelve years. She served as a Lieutenant at the facility. Shirley indicated that if she saw a grievance on the floor in the facility, she

would return it to the inmate if the grievance was filled out. However, Shirley also noted she would not read the grievance in detail. She would only read the grievance to identify where the grievance needed to go. Ms. Shirley testified that she did not recall ever finding a grievance completed by Plaintiff on the ground. Shirley also noted that she never collected mail from inmates or placed grievances in the grievance box for them.

    4.    *Ryan A. Kilduff*

Mr. Kilduff works for the ARB. Mr. Kilduff noted that the treatment of an inmate's grievance depends on how the inmate marked the grievance form. If an inmate marks a grievance as a medical issue and staff misconduct, the ARB will try to address both issues. Kilduff noted that only certain kinds of grievances can be sent directly to the ARB. This includes grievances concerning protective custody and issues from an inmate's prior facility. However, excepted from that are personal property or medical care at an inmate's prior facility, which means the current facility should handle those issues. Kilduff also testified that a grievance regarding receipt of high blood pressure medication would need to be filed at the inmate's current facility. Kilduff stated that an inmate cannot submit grievances directly to the ARB simply because he or she is unhappy with the responses received from past grievances at the facility level. Lastly, Kilduff reported that he was not aware of a grievance form shortage at Dixon Correctional Center in the Spring of 2021 and that the ARB received 25 grievances from Plaintiff between February and May of 2021.

5.      *Joshua Hoskins*

Plaintiff testified that he is familiar with the IDOC grievance process. He noted that the case at issue concerns allegations of denial of treatment for his blood pressure from February 1, 2020, to April 13, 2021. Plaintiff stated that he was prescribed blood pressure medication beginning in January 2021 after he was diagnosed with elevated blood pressure in December 2020. However, he indicated that he was experiencing symptoms of high blood pressure including headaches and chest pains prior to receiving the prescription for high blood pressure medication. Plaintiff also indicated that staff personnel were preventing him from seeking medical care for these symptoms. Plaintiff stated that he historically had difficulties getting certain counselors to process his grievances. He acknowledged that in the past, courts have not found his allegations against counselors credible.

## LEGAL STANDARDS

Summary judgment is proper when a moving party demonstrates that the record cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgment, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in its favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role in determining the outcome of a motion for summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter. Instead, the Court's role is to determine whether a genuine issue of material fact exists. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). However, in

*Pavey v. Conley*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies "are not required to be decided by a jury but are to be determined by the judge." 544 F.3d 739, 740-741 (7th Cir. 2008). Therefore, the Court must evaluate whether an inmate has exhausted administrative remedies when the affirmative defense of non-exhaustion is raised. If the Court determines that an inmate did not exhaust administrative remedies, the plaintiff is given the opportunity to exhaust should time still permit or if the failure to exhaust was innocent.[8] *Id.* at 742. Alternatively, if the Court determines that the failure to exhaust was the plaintiff's fault, the case is over. *Id.*

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison or other correctional facility *until* such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (emphasis added). When attempting to exhaust administrative remedies, prisoners must follow their prison's administrative rules. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002). As an inmate who was confined in the IDOC, Plaintiff was required to follow the regulations contained in the IDOC's Grievance

---

[8]     *Pavey* provides that an "innocent" failure to exhaust includes situations where prison officials prevent prisoners from pursuing exhaustion of their administrative remedies. 544 F.3d at 742. Further, if an inmate submits a grievance and does not receive a response, the inmate's attempts at exhaustion will be deemed thwarted, and the inmate will be allowed to proceed with the lawsuit. *See, e.g.*, *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (noting that an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (indicating that a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his remedies).

Procedures for Offenders ("IDOC Grievance Procedures") to properly exhaust his claim. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the exhaustion requirement under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Accordingly, a prisoner cannot satisfy the exhaustion requirement by filing untimely or otherwise procedurally defective grievances. *See Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Nor may a prisoner file a lawsuit while he or she is simultaneously proceeding through the prison's grievance process. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Consequently, if a prisoner fails to use a prison's grievance process properly, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

This result comports with the PLRA's statutory purpose of "afford[ing] corrections officials the time and opportunity to address complaints internally before allowing the initiation of a federal case." *Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012) (quoting *Porter v. Nussle*, 534 U.S. 516, 524-525 (2002)). Additionally, the exhaustion requirement provides prison administrations an opportunity to fix the problem, to reduce damages, and to shed light on the factual disputes that may arise in litigation. *See Pozo*, 286 F.3d at 1023-24. Grievances are not intended "to put individual defendants on notice of a lawsuit" but rather serve to alert prison officials of issues affecting inmates. *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 582 (7th Cir. July 13, 2010). Therefore, an inmate's failure to explicitly name defendants in a grievance is not fatal to exhaustion so long as the "grievance serve[s] its function by providing prison officials a fair opportunity to

address [the] complaint." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). *See also Jones v. Bock*, 549 U.S. 199, 219 (2007) (explaining that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances"). Instead, an inmate is only required to "articulat[e] what facts the prison could reasonably expect from a prisoner in [his or her] position." *Glick*, 385 Fed. Appx. at 582 (highlighting that an inmate "need identify names only to the extent practicable").

To initiate the grievance process, the IDOC Grievance Procedures first require that inmates file a grievance with a counselor at their correctional institution within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). In the grievance, the prisoner must provide: "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* at (c). Nonetheless, an inmate is not "preclude[d] from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.*

Should the inmate not be satisfied with the counselor's response, the inmate can then submit a formal grievance to the prison's grievance officer. *See* 20 ILL. ADMIN. CODE § 504.810(a)-(b). The grievance officer must review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60 days of receipt of the grievance, when reasonably feasible under the circumstances, the grievance officer must report his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See id.* at (e). The CAO shall review the findings and

recommendations from the grievance officer and advise the inmate of the decision in writing. *Id.* If the inmate is not satisfied with the CAO's decision, the inmate can then formally appeal to the Director through the ARB within 30 days of the CAO's decision. *See* ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of the grievance officer's report and the CAO's decision to the appeal. *See id.* The ARB then submits its written recommendation to the Director, who is responsible for issuing the IDOC's final decision within six months. *See id.* at (d)–(e).

DISCUSSION

As two sets of Defendants have submitted Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies, the Court will review the grievances in relation to each set of Defendants.

**A.      Exhaustion as to the Wexford Defendants**

The Wexford Defendants first note that Plaintiff submitted numerous grievances directly to the ARB against IDOC procedure and the exhaustion requirements set forth in the PLRA. (Doc. 69, p. 17); *see also* 42 U.S.C. § 1997e; 20 ILL. ADMIN. CODE § 504. Plaintiff's Grievance Record from Pickneyville shows that the grievances dated February 17, 2020, February 23, 2020, March 1, 2020, March 2, 2020, March 8, 2020, March 10, 2020, March 10, 2020, March 12, 2020, March 12, 2020, March 15, 2020, March 16, 2020, March 18, 2020, March 19, 2020, March 21, 2020, March 31, 2020, and April 6, 2020, were all submitted directly to the ARB. *Id.* at p. 3-5. Plaintiff argues that he submitted these grievances directly to the ARB in anticipation of being transferred to Dixon because the grievances concerned Pickneyville staff conduct. However, Plaintiff was not transferred

to Dixon until April 8, 2021. Thus, Plaintiff had time to fully exhaust these issues while he was housed at Pickneyville. As the Seventh Circuit takes a strict compliance approach to exhaustion, which requires inmates to follow all grievance rules established by correctional authorities, Plaintiff has failed to exhaust these grievances because he did not proceed through the grievance process at the facility level, which he had ample time to pursue. *See Applewhite v. Blum, et al.*, Case No. 17-cv-1111-JPG-SCW, 2018 WL 6202115, at *3 (S.D. Ill. Oct. 26, 2018) (citing *Dole*, 438 F.3d at 809).

Next, the Wexford Defendants point out that three grievances submitted by Plaintiff have procedural defects that prevent him from exhausting administrative remedies. The Wexford Defendants argue that Plaintiff failed to exhaust Grievance No. 584-02-20 and an unnumbered grievance dated March 15, 2020, because he submitted these grievances directly to the ARB without a grievance officer or counselor's response. (Doc. 69, p. 18). Defendants also argue that Plaintiff failed to exhaust Grievance No. 841-03-20 because he failed to include the dates when the alleged incident occurred pursuant to Department Rule 504. *Id.*

Regarding Grievance No. 584-02-20 and the unnumbered grievance dated March 15, 2020, Plaintiff was required to comply with Section 504.850(a) when appealing his grievances to the ARB. Section 504.850(a) states the following:

> If, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision. *Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached.*

ILL. ADMIN. CODE § 504.850(a) (emphasis added). Plaintiff's grievance record shows that Plaintiff did not attach the Grievance Officer's report or the CAO's decision to either Grievance No. 584-02-20 or the unnumbered grievance dated March 15, 2020. The failure to attach such requested documentation renders these grievances unexhausted. *See, e.g.*, *Gakuba v. Jeffreys et al.*, Case No. 19-cv-01081-SMY, 2020 WL 1812408, at *1 (S.D. Ill. Apr. 9, 2020) (noting that to exhaust at the final level of the grievance process, plaintiffs must attach the grievance officer's report and CAO's decision) (citing *Pozo*, 286 F.3d at 1024). Accordingly, Plaintiff failed to exhaust his administrative remedies because he failed to comply with the IDOC grievance procedures.

Turning to Grievance No. 841-03-20, Plaintiff was required to comply with the grievance submission standards set out in Section 504.810(c). Section 504.810(c) states that:

> The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, *when*, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

ILL. ADMIN. CODE § 504.810(c) (emphasis added). While Plaintiff does not state an individual date in his grievance, Plaintiff does note that "M.D. Myers, NP Blum and others . . . [have] been aware of my ongoing health issues but continue to deny me medical care." (Doc. 69, Exh. 3, p. 37). This arguably could be enough for Plaintiff to pursue a continuing violation claim against Myers and Blum. *See, e.g.*, *Turley v. Rednour*, 729 F.3d

645, 650 (7th Cir. 2013) (finding that when an objectionable condition is continuing, "prisoners need not file multiple successive grievances raising the same issue" to exhaust"). However, Plaintiff's grievance focuses on dental care, mental health care, hygiene, and respiratory issues. Plaintiff does not complain about being denied medical care for his elevated blood pressure from Blum, Myers, or Rueter in Grievance No. 841-03-20. In fact, for example, when Plaintiff complained about his respiratory issues, he made such complaints with respect to his dentist, who is a non-party. Thus, the facility was not placed on notice as to the conduct of Blum, Myers, or Rueter in relation to Plaintiff's blood pressure treatments. *Id. See also Selvie v. Siddiqui, et al.*, Cause No. 3:20-cv-00328-GCS, 2021 WL 347836, at *6 (S.D. Ill. Feb. 2, 2021) (concluding that plaintiff had successfully stated a claim for a continuing violation when the grievance referenced plaintiff's ongoing foot pain).

The Court finds that the same line of argument precludes Plaintiff from exhausting several additional grievances against Blum, Myers, and Rueter. The Defendants point out that Plaintiff did not name Myers, Blum, or Rueter in Grievance Nos. 2885-12-20, 6-1-21, 40-1-21, 115-01-21, 158-01-21, 279-01-21, 292-01-21, 431-02-21, 424-02-21, 469-02-21, and 193-01-21. Similarly, they note that Plaintiff failed to name Rueter and Blum in Grievance Nos. 345-01-21, 364-02-21, 369-02-21, 422-02-21, 474-02-21 and only named Myers in the grievance stating that he had previously prescribed Plaintiff blood pressure medication. Lastly, Defendants point out that Grievance Nos. 369-02-21 and 511-02-21 only concern dental care and access to religious items, neither of which are claims brought in this lawsuit. Allowing Plaintiff to exhaust these grievances

would directly contradict the PLRA's statutory purpose, which is to alert the prison to a wrong such that the prison has a fair opportunity to address the complaint before inmates file a lawsuit. *See Pozo*, 286 F.3d at 1023-24; *see also Maddox* 655 F.3d at 722. Because these grievances did not put the facility on notice as to the Defendants' conduct in relation to Plaintiff's alleged denial of access to blood pressure treatment, they cannot serve to exhaust Plaintiff's administrative remedies.

Grievance Nos. 1884-08-20, 1735-07-20, 1660-07-20, 1254-05-20, 1113-04-20, and 1112-04-20 present a closer call. Each of these grievances do concern the availability of the grievance process, which is relevant to Count 2 of Plaintiff's case. However, none of these grievances indicate that Defendants Myers, Rueter, or Blum had any hand in preventing Plaintiff from accessing the grievance process in retaliation for filing grievances against Pickneyville staff. Plaintiff only mentions that he had previously filed grievances against Myers, Rueter, and Blum for denial of medical care. This is not sufficient to insinuate that these Defendants prevented Plaintiff's grievances from being processed. *See, e.g.*, *Ross v. Lamb*, Case No. 19-cv-577-DWD, 2021 WL 4820369, at *3 (S.D. Ill. Oct. 15, 2021) (finding that plaintiff failed to exhaust his administrative remedies because the thrust of the plaintiff's grievance did not address the claims at issue in the lawsuit). Moreover, the Pickneyville Grievance log shows that Plaintiff failed to proceed to the required second level of review for these grievances. (Doc. 69, Exh. 1, p. 1). According to Section 504.810, Plaintiff was required to submit his grievances to the Grievance Officer for second level review to proceed through the IDOC grievance process. ILL. ADMIN. CODE §504.810(a)-(b). Plaintiff failed to do so with respect to these grievances, and as such they are not

exhausted.

## B.    Exhaustion as to the IDOC Defendants

As an initial matter, the IDOC Defendants concede that Plaintiff has properly exhausted several grievances. These include Grievance Nos. 6-1-21,[9] 345-01-21,[10] 364-02-21,[11] 431-02-21,[12] 469-02-21,[13] and 474-02-21.[14] Therefore, the Court will proceed to analyze the remaining grievances that the IDOC Defendants assert remain unexhausted.

The first grievance that the IDOC Defendants allege remains unexhausted is Grievance No. 115-01-21. (Doc. 76, p. 13). Defendants assert that the Grievance is not exhausted because Plaintiff failed to timely follow the grievance procedures outlined in

[9]    Grievance No. 6-1-20 has been exhausted as to Defendant Brock, whom Plaintiff alleges was participating in the destruction of his grievances in retaliation for Plaintiff filing previous lawsuits. (Doc. 76, p. 11).

[10]    Grievance No. 345-01-21 has been exhausted as to Defendants Bailey, Bartolotti, Brock, and Hermann who each allegedly told Plaintiff that they would make sure he did not receive his blood pressure medications in January 2021. (Doc. 76, p. 11).

[11]    Grievance No. 364-02-21 has been exhausted as to Defendant Blaylock, who allegedly told Plaintiff that he informed all health care unit staff that Plaintiff should not be given his blood pressure medications. (Doc. 76, p. 12).

[12]    Grievance No. 431-02-21 has been exhausted as to Defendants Bartolotti, Blaylock, Lueker, and Pestka, who each allegedly told Plaintiff between February 3, 2021, and February 5, 2021, that they had instructed staff to make sure Plaintiff did not receive his blood pressure medication in retaliation for him previously filing grievances and lawsuits against staff at Pickneyville. (Doc. 76, p. 12).

[13]    Grievance No. 469-02-21 has been exhausted as to Defendants Bailey, Bartolotti, Blaylock, Brock, Cacioppo and Pestka, who each allegedly told Plaintiff between December 2020 and February 2021 that they restricted Plaintiff's access to his blood pressure medication. (Doc. 76, p. 12-13).

[14]    Grievance No. 474-02-21 has been exhausted as to Defendants Bailey, Bartolotti, Blaylock, Brock, Cacioppo, Hankins, and Pestka, who each allegedly told Plaintiff between December 2020 and February 2021 that they restricted Plaintiff's access to his blood pressure medication. (Doc. 76, p. 13).

the Illinois Administrative Code. *Id.* (citing *Woodford*, 548 U.S. at 85). Defendants note that at all levels of the grievance process, the facility and the ARB determined that Plaintiff failed to meet the 60-day time frame set forth by DR504. Defendants believe this procedural shortcoming cannot be excused. The Court agrees in part with Defendants' analysis.

Plaintiff does provide a date in the body of this grievance. He states that "[o]n the above date [January 7th] during the evening shift]" that he encountered Sergeant Bartolotti. During Plaintiff's interaction with Sergeant Bartolotti, Bartolotti reportedly told Plaintiff that he and other correctional center staff "wanted his ass out of this facility since [he] enjoy[s] filing grievances and lawsuits." (Doc. 69, Exh. 6, p. 2). Plaintiff then went on to describe an alleged false disciplinary ticket scheme that Bartolotti had developed with other officers to get Plaintiff transferred out of the facility. *Id.* This allegation speaks to Count 2 of Plaintiff's lawsuit alleging First Amendment retaliation against Bartolotti. *Id.* As such, the Court finds that the grievance office improperly rejected Plaintiff's grievance as untimely. *See, e.g.*, *Hampton v. Wilson*, Cause No. 3:22-CV-765-DRL-MGG, 2023 WL 7298974, at *2 (N.D. Ind. Nov. 6, 2023) (finding that the grievance office improperly rejected the plaintiff's grievance as untimely and as a result his administrative remedies were unavailable).

However, this date does not speak to the conduct of the remaining Defendants. Further down in the body of the grievance, Plaintiff notes that he failed to receive grievances back in 2020 due to the conduct of "Lieutenants Wall, Baker, Shirley, Wangler, C/O Hankins, Bell, Jurkowski, Schlott, Rodman, Rich, Brock, Bailey, Nurse L. Patterson

. . . Sergeants Dudek, Porter, Spiller, C/O Cacioppo, Lieutenant Johnson, Sergeant Bartolotti, C/O Hale . . . Swisher, Summers, Sergeant Grove, and security staff." Such general assertions against a large group of Defendants are not sufficient to state a claim against them. *See, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (generic allegation that one or more defendants took an act is not sufficient). Moreover, Plaintiff does not include a specific date nor any additional details regarding his allegations against these defendants. Accordingly, Grievance No. 115-01-21 is only properly exhausted as to Defendant Bartolotti for Count 2.

Lastly, the IDOC Defendants argue that Plaintiff failed to exhaust Grievance No. 279-01-21 because Plaintiff did not receive a final response from the ARB until June 22, 2021. (Doc. 76, p. 14). Exhaustion must be completed prior to suing in federal court. *See Pozo*, 286 F.3d at 1024. *See also Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (noting that permitting a prisoner to sue first and then ask the prison to address issues that are the subject of pending litigation defeats the purpose of the PLRA exhaustion requirement.). Plaintiff filed this lawsuit on June 21, 2021. (Doc. 1). Thus, Grievance No. 279-01-21 was not fully exhausted prior to Plaintiff filing suit.

**C.     Plaintiff's Allegations that He was Denied Access to the Administrative Process**

In Plaintiff's Response to Defendants' Motions for Summary Judgment, he asserts that he filed Grievances dated February 17, 2020, February 23, 2020, March 1, 2020, March 2, 2020, March 10, 2020, March 15, 2020, March 18, 2020, March 19, 2020, March 31, 2020, and April 6, 2020, directly to the ARB because he had "difficulties getting his grievances handled by counselors at the facility level." (Doc. 78, p. 4). Both the IDOC Defendants

and the Wexford Defendants assert that Plaintiff's allegations should not be deemed credible because the record shows that Plaintiff successfully filed numerous grievances during 2020 and 2021. *See* (Doc. 76, p. 15). *See also* (Doc. 69, p. 20) (remarking that between February 1, 2020, to June 21, 2021, the ARB received 47 grievances from Plaintiff). Defendants also note that this Court has consistently discounted Plaintiff's allegations regarding the availability of various grievance procedures. *See, e.g.*, (Doc. 76, p. 16) (citing 12 cases where the Court found Plaintiff's allegations not credible); (Doc. 69, p. 20). Given Plaintiff's robust grievance record during the applicable period, Plaintiff's history of making outlandish claims regarding the availability of administrative remedies at the facility level, and Plaintiff's evasive behavior during the hearings on Defendants' Motions for Summary Judgment, the Court again does not find Plaintiff's claims regarding the unavailability of administrative remedies to be credible.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Wexford Defendants' Motion for Summary Judgment. (Doc. 68). The Court **GRANTS IN PART** and **DENIES IN PART** the IDOC Defendants' Motion for Summary Judgment. (Doc. 75). The Court **DENIES** the Motion as to Defendants Blaylock, Bartolotti, Brock, Bailey, Cacioppo, Lueker, Hankins, and Pestka in Count 2 and Bartolotti in Count 1. Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims against Defendants Blum, Myers, Rueter, Heck, Bell, Hermann, Newbury, Mumbower, Reid, Brown, Baker, Rodman, and Frank.

The Court **DIRECTS** the Clerk of Court to enter judgment reflecting the same at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:  January 25, 2024.**

Digitally signed by
Judge Sison
Date: 2024.01.25
14:51:13 -06'00'

_____

**GILBERT C. SISON**
**United States Magistrate Judge**